UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM M. BELEGRIN, JR., ) | CASE NO. 3:09CV1700 |
| ) | |
| Plaintiff, ) | JUDGE JAMES C. CARR |
| ) | Magistrate Judge George J. Limbert |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF ) | **REPORT AND RECOMMENDATION** |
| SOCIAL SECURITY, ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Defendant. ) | |
| ) | |

William M. Belegrin, Jr. ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the Commissioner's decision:

**I.   PROCEDURAL HISTORY**

On July 8, 2003, Plaintiff filed an application for DIB, alleging an onset date of March 1, 2003 due to shortness of breath, coronary artery disease, chest pain, an abnormal heart, hyperdectomy and hyperlipidemia. Tr. at 134-135, 143. The SSA denied Plaintiff's application initially and upon reconsideration. *Id*. at 106-110. Plaintiff timely requested a hearing before the ALJ and on August 17, 2005, an ALJ conducted a hearing where he received testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 745. On December 5, 2006, the ALJ issued a Notice of Decision – Unfavorable, finding that Plaintiff was not disabled. *Id*. at 83-92. Plaintiff, through counsel, appealed this decision to the Appeals Council, and on September 28, 2007, the Appeals Council issued a decision granting Plaintiff's request for review and vacating the hearing decision, remanding the case to an ALJ because the ALJ who issued the decision did not provide an adequate evaluation of particular treating source opinions, including

those of Dr. Welch and Dr. Sherman. *Id*. at 73-74. The Appeals Council noted that the ALJ did not given significant weight to a medical source statement of Dr. Sherman dated August 16, 2006 in which he found Plaintiff to be markedly limited in performing detailed tasks, maintaining attention and concentration, sustaining an ordinary routine, working with others, completing a normal workday or workweek, interacting with the public, responding to changes and setting goals independently. *Id*. at 73, citing Tr. at 512-516. The Appeals Council noted that the ALJ's reasons for not giving significant weight to this statement were insufficient. *Id.* at 73. The Appeals Council noted that the ALJ had not given significant weight to Dr. Sherman's statement because it inaccurately stated that Plaintiff's mental condition had deteriorated after finding out that he had liver cancer when Plaintiff in fact had kidney cancer. *Id.* The Appeals Council found that Dr. Sherman was treating Plaintiff for depression and found it reasonable to conclude that Plaintiff's diagnosis and treatment of cancer could impact the severity of Plaintiff's depression, regardless of whether it was liver or kidney cancer. *Id*. at 74. The Appeals Council further found that the ALJ had inaccurately stated that Dr. Sherman reported that Plaintiff was working as an oncology technician despite Plaintiff's allegations that he was not currently working. *Id*. The Appeals Council indicated that Dr. Sherman's notes stated that Plaintiff reported that his wife was working as an oncology technician. *Id.*

Accordingly, the Appeals Council remanded the case and ordered the ALJ to, *inter alia*, evaluate the medical source statements according to the regulations and provide the weight given to the opinion evidence. Tr. at 74. The Appeals Council also indicated that the ALJ could request that the treating sources provide additional evidence or clarification with regard to their opinions and medical source statements of Plaintiff's functional capacities. *Id.* The Appeals Council further ordered the ALJ to consider new and material evidence from Dr. Ware. *Id.* The Appeals Council also ordered the ALJ to offer Plaintiff a hearing, address the evidence submitted and take any further action necessary to complete the administrative record. *Id*. It was noted that Plaintiff had filed a subsequent claim for disability on July 31, 2007 and that the Appeals Council action on the instant claim rendered the July 31, 2007 claim a duplicate. *Id*. at 75, 116. The Appeals Council ordered the ALJ to associate the claim files and issue a new decision on the associated claims. *Id.*

On August 21, 2008, the ALJ held a hearing, where he received testimony from Plaintiff, who was represented by counsel, and a VE. Tr. at 771. On October 28, 2008, the ALJ issued a Notice of Decision – Unfavorable, finding that Plaintiff was not disabled. *Id*. at 16-38. Plaintiff, through counsel, appealed the decision to the Appeals Council, and on March 16, 2009, the Appeals Council issued a decision denying Plaintiff's request for review, finding no reason to review the ALJ's decision. *Id*. at 8-12.

On July 22, 2009, Plaintiff filed the instant suit. ECF Dkt. #1. On January 20, 2010, Plaintiff filed a brief on the merits.[1] ECF Dkt. #10. On March 22, 2010, Defendant filed a brief on the merits. ECF Dkt. # 18. On April 4, 2010, Plaintiff filed a reply brief. ECF Dkt. #19.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ first noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. Tr. at 16. The ALJ found that Plaintiff had the severe impairments of chronic obstructive pulmonary disease and sleep apnea. *Id*. at 19, 27. The ALJ proceeded to review Listing 4.01 for a cardiovascular impairment, Listing 9.08 for diabetes mellitus, Listing 3.02 for chronic pulmonary insufficiency, and Listing 12.00 for mental disorders. *Id*. The ALJ found that Plaintiff's conditions did not meet any or medically equal any of the Listings. *Id.*

With regard to Listing 12.00, the ALJ specifically found that the evidence failed to show that Plaintiff's mental impairments resulted in at least two of the following: marked restriction of daily living activities; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence and pace; or repeated episodes of decompensation. Tr. at 19. The ALJ reviewed the opinions 2006 and 2008 opinions of Dr. Sherman, Plaintiff's treating psychiatrist, who opined in 2006 that Plaintiff was markedly limited in numerous areas due to her depressive disorder not otherwise specified, major depression and adjustment disorder. *Id*. at 32. The ALJ gave no weight to the 2006 opinion because it was inconsistent with Dr. Sherman's own

---

[1] The undersigned notes that Plaintiff's merits brief is 33 pages long, well over the 20-page limitation set forth by the Local Rule. L.R. 7.1(f). Plaintiff did not seek or obtain leave in which to file a brief over the page limits. Nevertheless, the undersigned has reviewed the brief in its entirety.

treatment notes. *Id.* The ALJ also gave no weight to Dr. Sherman's 2008 letter to Plaintiff's attorney in which he stated that medications had been of little help to Plaintiff's impairments, except to reduce his suicidal ideas which had been intense early in treatment. *Id.* at 33, citing Tr. at 655. Dr. Sherman had also indicated in the 2008 letter that Plaintiff's presentation of symptoms had been consistent throughout his treatment with Dr. Sherman and were consistent with Plaintiff's presentation to Dr. Deardorff, an examining agency psychologist. *Id.* at 656. Dr. Sherman opined his "medical opinion with reasonable professional certainty that Mr. Belegrin's psychiatric symptoms alone were sufficient to render him disabled." *Id.* The ALJ gave little, if any, weight to Dr. Sherman's 2008 letter because it was offered after Plaintiff's date last insured, it was not consistent with Dr. Sherman's treatment notes, and it contained errors. *Id.* at 33.

The ALJ also rejected the opinions of Dr. Deardorff, an examining agency psychologist, who opined that Plaintiff was markedly limited in relating to others and in withstanding workplace stress and pressure. Tr. at 33-34. The ALJ found that the evidence and record as a whole failed to support Dr. Deardorff's marked limitations. *Id.* at 34.

The ALJ thereafter adopted the October 9, 2007 and May 13, 2008 mental residual functional capacity ("MRFCs") provided by the state agency psychologists. Tr. at 36. The October 9, 2007 MRFC provided by Dr. Edwards concluded that Plaintiff's depression and anxiety impairments provided mild restrictions in daily living activities and maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace. *Id.* at 591-601. In finding that Plaintiff had no significant limitations in any of the understanding and memory categories or the social interaction and adaptation categories, Dr. Edwards relied upon the ALJ's determination of December 5, 2006 which found mild limitations in all work abilities but provided for no strict production or pace standards. *Id.* at 605. He found Plaintiff moderately limited in two of the sustained concentration and persistence categories: the ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods of time. *Id.* at 605. In the May 13, 2008 MRFC, Dr. Khan concluded that Plaintiff's ADHD, in partial remission, his mood disorder not otherwise specified, and his panic disorder with agoraphobia moderately limited his daily living activities, social functioning and concentration, persistence and pace. *Id.* at 664-674.

-4-

In addition to adopting the agency psychologists' MRFCs, the ALJ added a limitation that Plaintiff be precluded from work which imposes a closely regimented pace of production and close and critical supervision in order to accommodate Plaintiff's moderate impairments in maintaining concentration, persistence and pace. Tr. at 36. The ALJ thereafter concluded, based upon the VE's testimony, that Plaintiff could perform a significant number of jobs available in the national economy with the RFC and particularly, the MRFC, that the ALJ had given to the vocational expert. *Id*. at 37-38.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and

makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).   Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.      ANALYSIS**

    **A.      MEDICAL SOURCE OPINIONS**

Plaintiff first asserts that the ALJ erred in analyzing Dr. Sherman's opinion, especially in light of Dr. Deardorff's examination and assessment.  ECF Dkt. #16 at 12.  Dr. Sherman began treating Plaintiff on April 28, 2006 for his complaints of depression and anxiety that he had suffered for at least the past three years.  Tr. at 496-497.  Plaintiff told Dr. Sherman that he attributed his depression and anxiety to the heart attack he suffered three years ago.  *Id*. at 499.  Plaintiff denied suicidal ideation.  *Id.*  On August 16, 2006, Dr. Sherman completed a check-box MRFC form provided by Plaintiff's counsel and stated Plaintiff's diagnoses as depressive disorder not otherwise specified, major depression, and adjustment disorder. *Id*. at 512.  Dr. Sherman indicated that Plaintiff was moderately limited in understanding and remembering, as well as executing, very short and simple instructions and locations and work-like procedures.  *Id*.  Dr. Sherman found Plaintiff markedly limited in his ability to understand and remember detailed instructions, but only moderately limited in executing such instructions.  *Id*. at 513.  He further found Plaintiff markedly limited in: maintaining concentration and attention for extended periods of time; sustaining an ordinary routine

-6-

with special supervision; working with others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others. *Id.* at 513-515.

The ALJ gave no weight to Dr. Sherman's 2006 assessment, finding it inconsistent with Dr. Sherman's treatment notes. Tr. at 32. The ALJ also gave no weight to Dr. Sherman's August 18, 2008 letter to Plaintiff's attorney regarding Plaintiff's impairments, finding the letter written well after Plaintiff's date last insured, and "undermined" by errors. *Id*. at 33.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The ALJ found that Dr. Sherman's 2006 assessment was entitled to no weight because his treatment records did not support such limitations and the notes showed improvement since the initial evaluation, which had only itself indicated moderate symptoms. Tr. at 32. The ALJ also found no support for Dr. Sherman's opinion that Plaintiff's mental health had deteriorated after his heart attack and cancer diagnosis since Dr. Sherman reported this only a few months before beginning a treatment relationship with Plaintiff, Plaintiff failed to seek mental health treatment until two years after his diagnoses of cardiac impairment and cancer and three years after his onset date, and Plaintiff had already reported some benefit from medication at the time that Dr. Sherman completed the questionnaire. *Id*.

The undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to afford no weight to Dr. Sherman's 2006 assessment. As pointed out by the ALJ, Plaintiff had been diagnosed with depression and anxiety and was taking medication for these conditions beginning in 1999 and throughout 2003, well before his alleged onset date, but he continued to work despite these conditions. Tr. at 31, citing Tr. at 331, 335, 362-364, 383, 385-386, 394-397, 402, 404. Further, while depression and anxiety could have indeed increased after Plaintiff's diagnoses and treatment of a cardiac impairment and cancer, Dr. Sherman's treatment notes do not support his marked limitations assessed for Plaintiff as the notes rely on Plaintiff's self-reports of his symptoms and limitations, and an oral report from Plaintiff's wife as to his symptoms.

These are not medically acceptable clinical and laboratory diagnostic techniques that would support Dr. Sherman's opinions. Dr. Sherman's only cited support for his MRFC assessment was that "Patient's mental condition/personality deteriorated after heart attack and dx of diabetes and liver[2] cancer." *Id*. at 516. The ALJ found this statement not to be an objective observation since Dr. Sherman had only began treating Plaintiff a few months before the assessment and Plaintiff had been diagnosed with coronary artery disease in 2003 and a renal cell carcinoma in January 2006. *Id*. at 282, 473. Moreover, as the ALJ noted, Plaintiff reported at the appointment preceding Dr. Sherman's completion of the assessment, that he was "having a few better days." *Id*. at 32, 524. The ALJ also described activities reported by Plaintiff in the record which showed that Dr. Sherman's marked limitations were unsupported, such as going to his cabin to go hunting, going out to a restaurant by himself and visiting with his brothers. *Id.* at 33, 35. While substantial evidence may support a finding to the contrary in this case, the standard of review is whether substantial evidence supports the ALJ's determination of the weight to give Dr. Sherman's opinion and whether that determination is legally sound. Based upon the foregoing, the undersigned recommends that the Court find that it is.

The undersigned also recommends that the Court find that substantial evidence supports the ALJ's decision to give little, if any, weight to Dr. Sherman's 2008 letter to Plaintiff's attorney because it was offered after Plaintiff's last insured, it contained errors, and it was inconsistent with Dr. Sherman's treatment notes. Tr. at 33. The ALJ noted that Dr. Sherman's letter is dated August 18, 2008, eight months after Plaintiff's date last insured. *Id*. at 655. The Court could set aside the eight month delay between the letter and the date last insured since subsequent evidence after a date last insured may be relevant to show a claimant's limitations prior to the date last insured. *See Barhouma v. Astrue*, No. 1:09-CV-1180, 2010 WL 2044952 (N.D. Ohio May 24, 2010). However, even setting aside the ALJ's partial reliance upon the eight-month period, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to afford little,

---

[2] Dr. Sherman mistakenly indicated that Plaintiff was diagnosed with liver cancer. Plaintiff was diagnosed with kidney cancer. Tr. at 486.

-9-

if any, weight to Dr. Sherman's 2008 letter. As pointed out by the ALJ, while Dr. Sherman reports in the letter that numerous medications have had little impact on Plaintiff, his treatment notes show that Plaintiff improved with medication. *Id*. at 524 ("a few better days" reported on July 24, 2006); 589 ("feels a little better...went hunting a couple times" reported on September 25, 2006); 587 ("maybe helping a little bit" reported on July 23, 2007); 658 ("helps a little" reported on October 22, 2007, "a little difference" reported on January 28, 2008 and "maybe a little better on med" reported on March 31, 2008). Moreover, the ALJ properly noted that Dr. Sherman erroneously stated in the letter that Plaintiff had intense suicidal ideas early on in treatment when his treatment notes only cite to one instance where Plaintiff indicated suicidal ideas on September 5, 2006, which were described as "fleeting" and with "no plans–no danger." *Id.* at 589, 655. In fact, some of Dr. Sherman's treatment records show that Plaintiff had no suicidal ideas or intent and many did not mention suicidal ideas at all. *Id*. at 499, 500, 658. And while Dr. Sherman concluded his letter with a medical opinion that Plaintiff's psychiatric symptoms rendered him disabled, this is an issue reserved to the Commissioner and such an "opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). Since Dr. Sherman's treatment notes contradicted his opinion, and whether a claimant is disabled is an issue reserved to the Commissioner, the Court should find that the ALJ did not err in the little weight that he attributed to Dr. Sherman's opinion.

Substantial evidence also supports the ALJ's decision to give Dr. Deardoff's marked limitations in Plaintiff's MRFC only "some" weight. Tr. at 36. After Plaintiff's date last insured, Dr. Deardorff found that Plaintiff was markedly limited in his ability to relate to others and to withstand workplace stress and pressure. *Id*. at 625. The ALJ found that the record supported neither of these limitations. *Id*. at 34. Dr. Deardorff had opined that Plaintiff had a marked limitation in his ability to relate to others because he was uncomfortable dealing with Dr. Deardorff during the examination and Plaintiff related having few friends, rarely leaving his home, avoiding people, and having panic attacks. *Id*. at 625. However, the ALJ noted that the record contained no other comment by any other medical provider that Plaintiff was uncomfortable or uneasy when dealing with them, Plaintiff had indicated that he had gone to his hunting cabin a couple of times,

he had a relationship with his wife and he occasionally visited his brothers. *Id.* at 34, 589-590. Plaintiff's wife also indicated to Dr. Sherman that Plaintiff was "fine around people he knows." *Id.* at 590. The undersigned recommends that the Court find that these reasons constitute substantial evidence to support the ALJ's decision to discount Dr. Deardorff's limitation.

As to Dr. Deardorff's conclusion that Plaintiff was markedly limited in withstanding work pressures and stress, the ALJ found it unsupported because Dr. Deardorff had indicated that increased stress could lead to "manic behavior" without explaining how he came to such a conclusion, especially in light of the fact that Plaintiff reported using Xanax only rarely, Plaintiff reported very few complaints of panic attacks, and agoraphobia was never listed as a diagnosis. *Id*. While these findings are correct, Dr. Deardorff's limitation appears to be based upon more than just a panic disorder or avoidant behavior diagnosis, since he states that Plaintiff would be markedly limited in withstanding pressure and stresses of work due to his emotional difficulties and such pressures may increase his anxiety, decrease his attention and concentration, and increase his panic attacks and avoidant behavior. *Id*. at 626. Dr. Deardorff further states that subjecting Plaintiff to work pressures and stress may also increase his depressive symptoms, such as crying, withdrawal and slowed work performance and lead to increase impulsivity, restlessness, easy distractability and anger control issues. *Id*. The ALJ's decision to afford only "some weight" to this finding is nevertheless supported by substantial evidence because Dr. Deardorff is a one-time examining agency physician who examined Plaintiff four months after his date last insured. Moreover, the ALJ accommodated any work stress limitation by adjusting Plaintiff's MRFC to include a "closely regimented pace of production and close and critical supervision." *Id*. at 36. In addition, as the ALJ noted, Plaintiff was working full-time for over two years, which would require withstanding work pressures and stress, before seeking mental health treatment. *Id*. at 31. Even if the Court found that the ALJ's determination as to this limitation was erroneous, the undersigned would recommend that it be found to be harmless error since the limitation was accommodated by the ALJ's MRFC for Plaintiff. *See Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001)(harmless error rules applies in Social Security context).

-11-

For the above reasons, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to give little weight to the opinions of Dr. Sherman and only "some weight" to Dr. Deardorff's opinions.

### B. VOCATIONAL EXPERT ("VE")

Plaintiff further asserts that the VE's testimony in this case does not constitute substantial evidence to support the ALJ's conclusion that a significant number of jobs existed in the economy for a hypothetical person to perform with the RFC and MRFC provided by the ALJ. ECF Dkt. #16 at 19. Plaintiff complains that the ALJ indicated in his decision adopting the VE's testimony that the VE identified certain jobs as "representative occupations" when in fact the VE did not so identify the jobs as such. *Id*. At the hearing, the ALJ asked the VE whether other work besides Plaintiff's past relevant work existed for a hypothetical individual with Plaintiff's background and certain physical and mental restrictions, including a sit/stand option and the avoidance of intense contact with the public and no close regimentation of production. Tr. at 792-793. The VE indicated that other work would exist for such an individual: "Other work given the hypothetical would be based upon a sedentary, unskilled occupational base and positions that would apply would include bench worker, 250, assembler, 250 and break lining coder, 250." *Id*. at 794. The ALJ thereafter asked whether the VE's characterization of the jobs identified was consistent with the Dictionary of Occupational Titles (DOT) and the VE responded that it was, except that the sit/stand option was not recognized in the DOT but the jobs identified did allow for the sit/stand option based upon the VE's "experience in conducting job placement and labor market surveys and the numbers reflect that, and that's based upon how they're actually completed." *Id.* In relying upon the VE's testimony, the ALJ indicated in his decision that the VE had testified the hypothetical person with the limitations and background given by the ALJ "would have been able to perform the requirements of representative occupations such as: bench worker (250 jobs in the regional economy in which the claimant resides); assembler (250 jobs in the regional economy)" and brake lining coater (250 jobs in the regional economy)." *Id*. at 37.

Plaintiff alleges error in the ALJ's characterization of the VE's testimony as identifying "representative occupations" when the VE did not state that the jobs were representative

-12-

occupations. Plaintiff appears to assert that the ALJ presumed that the jobs identified by the VE were merely representative of a larger number of jobs and he made no finding that the 750 jobs in the three occupations identified by the VE were indeed a significant number of jobs since the VE did not in fact state that those jobs were merely representative of a larger amount of other jobs. *Id.* at 20.

The undersigned recommends that the Court find that Plaintiff's assertion has no merit. First, the VE's testimony could be construed as stating that the three jobs identified were in fact representative occupations and did not constitute an exhaustive list, since he did indeed state that such jobs "would include" bench worker, assembler and brake lining coater. Tr. at 794. In addition, the number of jobs identified by the VE is sufficient evidence for an ALJ to determine that work existed in significant numbers that Plaintiff could perform. *See Girt v. Astrue*, No. 5:09-CV-1218, 2010 WL 908663 at *4 (N.D.Ohio, Mar. 12, 2010) (collecting cases). Moreover, the vocational expert testified that no inconsistency existed with the DOT and that while the sit/stand option is not recognized in the DOT as allowing for that limitation, the VE's experience and labor market surveys and job placements reflected the numbers that he gave with regard to the bench worker, assembler and brake lining coater. *Id*. The Seventh Circuit has held that "[a] vocational expert is 'free to give a bottom line' [when testifying before an ALJ,] but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir.2002). In those instances, " [i]f the basis of the vocational expert's conclusions is questioned at the hearing ... then the ALJ should make an inquiry ... to find out whether the purported expert's conclusions are reliable." *Id*.

The ALJ did inquire as to the reliability of the VE's conclusions and they were based upon the VE's experience in job placement with such restrictions and in labor market surveys. Tr. at 794. Plaintiff had an opportunity to challenge the basis of the vocational expert's qualifications and the basis of his opinion, but he never did. Rather, Plaintiff's counsel chose to present a hypothetical individual with additional limitations. *Id*. at 795-796. If this Circuit were to apply the rule of law from *McKinnie,* then Plaintiff's argument would certainly be considered waived for failure to inquire

-13-

with the expert at the administrative hearing. The Sixth Circuit has clearly held that a claimant "cannot . . . contest the general qualifications of the VE after expressly conceding the qualifications in the hearing before the ALJ. Counsel also cannot complain of the failure of the VE to supply specific statistical evidence in the absence of an express request by counsel for those statistics." *Yopp-Barber v. Commissioner of Social Sec.*, 56 Fed.Appx. 688, 689-90 (6th Cir. Jan. 27, 2003), unreported. Further, "nothing in the applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir.2008); *see also Ragsdale v. Shalala*, 53 F.3d 816, 819 (7th Cir. 1995) (failure to challenge basis of vocational expert's testimony at administrative hearing constitutes waiver of the issue in the district court).

Given the foregoing, the undersigned recommends that the Court find that substantial evidence supports the ALJ's reliance upon the VE and his determination that a significant number of jobs existed in the economy that Plaintiff could perform.

## VI.  CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the Commissioner's decision denying DIB to Plaintiff.


DATE: August 23, 2010                                  *s/ George J. Limbert*
                                                       GEORGE J. LIMBERT
                                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).